IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RUTH CRUCES,<br><br>  Plaintiff,<br><br><br><br>  vs.<br><br><br>INTERNATIONAL DOWN & FEATHER<br>TESTING LABORATORY,<br><br>  Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br><br><br>Case No. 2:11-CV-984 TS |

This matter is before the Court on Defendant International Down & Feather Testing Laboratory's ("IDFL") Motion for Summary Judgment on Plaintiff's claims of age and race/national origin discrimination, retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"). For the reasons stated below, the Court will grant Defendant's Motion

## I.  BACKGROUND

Defendant IDFL conducts quality assurance evaluations for filled textile products, and operates facilities to perform this testing in Utah, Switzerland, and China. In September of 2004,

Plaintiff was hired by Defendant's CEO, Wilford Lieber, to work in Defendant's Salt Lake City facility as a content and species analyst.  Plaintiff is Hispanic and was thirty-nine years old at the time she was hired.  Plaintiff's job entailed separating feathers and down in samples and determining the composition and species of the material.

Plaintiff's work was evaluated based on its speed and accuracy.  As each sample was analyzed by multiple employees, Defendant evaluated accuracy by comparing the average disparity of a particular employee's analysis with that of the other employees who analyzed the same sample.[1]  Defendant used a computerized reporting process to determine the average speed with which employees completed samples.  Employees would check out a sample to begin work and check it back in when they were finished.  Defendant would rank members of the content and species department based on the average amount of time it took them to perform a complete analysis on a sample.[2]  A complete analysis consists of a first separation, second separation, and a species test.[3]

Due to various factors, the number of samples received in the Salt Lake City IDFL facility declined 27% between 2007 and 2008 and another 4% in 2009.  During that time, the Content and Species Department contracted from 79 employees in 2007 to 23 in 2009.[4]

---

[1]Docket No 25, at 2.

[2]Docket No. 26 Ex. 1.

[3]Docket No. 25 Ex. 4.

[4]Docket No. 25, at 4.

On February 4, 2009, Wilford Lieber reduced Plaintiff's hours from 40 hours per week to 30 hours per week.[5]  Plaintiff, along with three of her family members, was informed of this action by letter when they returned from a vacation to Peru.[6]  In his declaration, Mr. Lieber states that, because Defendant's Salt Lake City location was receiving less samples than it had in the past, the hours of approximately 22 employees, including Plaintiff, were affected by the hours reduction.  In order to decide which employees' hours to reduce, Wilford Lieber, Human Resources Manager Kristin Lieber, and managers Blake Boyer and Jeffrey Chang reviewed the computer data on employee speed.  Wilford Lieber made the final decision on how many hours each employee would receive.[7]

After having her hours reduced, Plaintiff complained to Wilford Lieber, claiming that the Asian workers were receiving preferential treatment and were being given more hours than the other employees.[8]  Mr. Lieber informed Plaintiff that the hours were assigned based on efficiency and that she could receive more hours if she improved her speed.[9]  In her deposition, Plaintiff acknowledged that the workers who received more hours were working more quickly than the other workers, although she testified that they performed lower quality work.[10]  Plaintiff also

---

[5]Docket No. 24, at 5.

[6]Docket No. 26 Ex. 1.

[7]Docket No. 26, at 2-3.

[8]Docket No. 33 Ex. 1, at 19-20.

[9]Docket No. 26, at 3; *see* Docket No. 33 Ex. 1, at 20.

[10]Docket No. 33 Ex. 1, at 20-21, 27, 34-35, 58; Docket No. 24 Ex. 1, at 29.

testified that several times during 2009 one of the content and species managers, Jeffrey Chang, and one of Plaintiff's co-workers, June Xin, said that "they needed quick people and young."[11]

In addition to her complaints about the reduction in her hours, Plaintiff complained to management that some employees were not required to speak English in the workplace.[12]

On August 27, 2009, Plaintiff filed a Charge of Discrimination with the Utah Anti-discrimination and Labor Division (UALD), making the following allegations:

> I am Hispanic and over the age of 40. I do my job well and this employer hired me in October 2004. During my employment I have been subjected to intimidation. After I returned from vacation in February 2009 I was told that they were unaware of my vacation as well as due to business being slow my hours were being cut. However this employer has been hiring new younger employees of a different ethnicity than me and giving preference to Asian employees by giving them full time hours. The cut in my hours has affected my assignments. My supervisor has also stated that he was in need of "younger and faster workers." I believe I have been discriminated against as well as my family who also works there.
>
> I believe I have been discriminated against because of my race, national origin and age in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the Utah Antidiscrimination Act of 1965, as amended.[13]

On September 10, 2009, after receiving Plaintiff's Charge of Discrimination from the UALD, Wilford Lieber and Kristin Lieber met with Plaintiff in Wilford's office. Wilford asked Plaintiff to mediate her Charge, but she refused on the grounds that she had already attempted to address her concerns with management and felt that she had been ignored.[14] Furthermore, she

---

[11]Docket No. 24 Ex. 1, at 57.

[12]Docket No. 41 Ex. B, at 13.

[13]Docket No. 24 Ex. 2.

[14]Docket No. 33 Ex. 13, at 1.

stated that "if IDFL chooses to fire me because I filed a discrimination complaint with the Labor Commission that is up to the their [sic] discretion."[15]

The next day, September 11, 2009, Plaintiff was asked to leave with fellow IDFL employee Amphay Kuonthong, the last employee to leave who had a key.  Prior to this time, Plaintiff had been able to work late, so long as a night shift employee or another employee with a key was on duty.  Plaintiff described the incident in her deposition as follows:

> Q: (counsel) Did you ever have any conflict with the people that worked the night shift?
> A: (Plaintiff) There was no conflict, but then at night there was a worker named Ampay [sic]. After I put in the complaint, I worked one night. She called me at 8:30. It was 8:20, 8:30, around there. She called and said, Cruces, I'm going to be leaving. I said, wait five minutes so I can finish this work. So after five minutes, I finished and we left together.[16]

Soon afterward, on September 14, 2009, Plaintiff met with Wilford Lieber, Kristin Lieber, and Blake Boyer.  In this meeting, Plaintiff was told that, due to the economy, Plaintiff's hours and the hours of some of her coworkers would be further reduced and that Defendant would only have intermittent work for her.[17]  Plaintiff was also informed that, due to the incident with Amphay Kuonthong and another incident with a night shift employee, the details of which are not before the Court, she would thereafter be required to leave by 6:00 p.m.[18]  Plaintiff was

---

[15] *Id.*

[16] Docket No. 33 Ex. 1, at 24-25.

[17] Docket No. 26 Ex. 2, at 1.

[18] *Id.* at 2.

also told that she must stop telling other employees that she wished to be fired, although Plaintiff disputes that she had ever made that type of statement to her coworkers.[19]

Defendant used the same method for determining which employees' hours to cut as it did in February 2009.  Wilford Lieber, Blake Boyer, Jeffrey Chang, and Kristin Lieber reviewed the 2008 computer data on employee speed, and Wilford Lieber made the decision to reduce the hours of less efficient employees, including Plaintiff.[20]

The next day, on September 15, 2009, Plaintiff filed an Amended Charge of Discrimination with the UALD, adding a charge of retaliation.[21]  Plaintiff's amended Charge was identical to the first, except that it included the retaliation claim and stated that "[o]n September 14, 2009 I was suspended from work for an undetermined amount of time for filing a charge of discrimination with the Labor Commission."[22]

On September 23, 2009, Plaintiff filed another Charge of Discrimination.  This Charge removed the language indicating that Defendant was suspended, replacing it with the following statement: "On August 27, 2009 I filed a charge of discrimination with the Labor Commission [sic] since filing the charge my work hours have become less flexible and my work hours have been reduced."[23]  Plaintiff filed no further Charges with the UALD.

---

[19]*Id.*

[20]Docket No. 26, at 4.

[21]Docket No. 2, at 5.

[22]Docket No. 24 Ex. 3.

[23]Docket No. 24 Ex. 4.

On October 8, 2009, as part of a reduction in force ("RIF"), Defendant terminated Plaintiff's employment along with that of ten other employees in the Content and Species Department.   Although three or four of the terminated employees were eventually rehired, Plaintiff was not.[24]  The decision on which employees to terminate was made by Wilford Lieber and Kristin Lieber,[25] although Jeffrey Chang and Blake Boyer participated in the decision.[26]  At the time this decision was made, Plaintiff was 44 years old.  Defendant states that the decision on which employees to terminate was made based on the 2008 computer data on employee speed, and that the nine least efficient employees were terminated along with two employees that were unable to perform all of the steps in the content and species analysis process.[27]  Plaintiff was ranked number twenty of twenty-five employees in the 2008 efficiency rankings.[28]  The downsized employees ranged in age from 22 to 74 and included five Caucasians, two Africans, three Hispanics, and one Asian.[29]

On June 21, 2010, the UALD issued a Determination and Order, discussing Plaintiff's charges for discrimination and retaliation.[30]  Although the Determination and Order considers the

---

[24]Docket No. 33 Ex. 2, at 54.

[25]*Id.*

[26]Docket No. 26, at 4-5.

[27]*Id.*

[28]*Id.* at 5.

[29]*Id.*

[30]Docket No. 50, at 1-6.

reduction in Plaintiff's hours in February 2009 and September 2009, it does not examine or refer to her October 2009 termination.[31]  Nor does the report consider Plaintiff's claims that she was forced to speak English while other employees were allowed to use their native languages.[32]  On July 28, 2011, the United States Equal Employment Opportunity Commission issued a Right to Sue Letter authorizing the Plaintiff to initiate proceedings in an appropriate court of competent jurisdiction.[33]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[35]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[36]

---

[31]*See id.*

[32]*See id.*

[33]Docket No. 2, at 2.

[34]Fed. R. Civ. P. 56(a).

[35]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[36]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

A.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant argues that Plaintiff has not administratively exhausted her claims for discriminatory and retaliatory termination in violation of Title VII and the ADEA.  Additionally, Defendant argues that Plaintiff has not exhausted her claim that Defendant discriminated against her by allowing Asian workers to speak their native languages around the workplace while requiring her to speak English.

"In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit."[37]  This jurisdictional prerequisite exists for claims made under both Title VII and the ADEA.[38]  Where the alleged conduct involves discrete acts, a "plaintiff [must] exhaust administrative remedies for each individual discriminatory or retaliatory act."[39]  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[40]

A Title VII plaintiff exhausts her administrative remedies for a discrete act of discrimination by filing a Charge of Discrimination with the UALD that includes the act within

---

[37]*Jones v. United Parcel Serv.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

[38]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[39]*Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

[40]*Morgan*, 536 U.S. at 114.

the scope of its allegations.[41]   A specific discriminatory act is within the scope of the Charge's

allegations where an "administrative investigation" into that act "can reasonably be expected to

follow the charge of discrimination."[42]   In making this determination with respect to any specific

claim, the allegations in the charge are construed liberally.[43]

This is different from the continuing violation theory recognized in the past.  The Tenth

Circuit has held that "*Morgan* abrogates the continuing violation doctrine as previously applied

to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching

that each discrete incident of such treatment constitutes its own unlawful employment practice

for which administrative remedies must be exhausted."[44]   "The requirement  . . . that the charge

be filed 'after' the practice 'occurred' tells us that a litigant has up to 180 or 300 days *after* the

unlawful practice happened to file a charge with the EEOC."[45]   As was recently emphasized by

the Tenth Circuit,

> [the] inquiry is limited to the scope of the administrative investigation that can
> reasonably be expected to follow from the discriminatory *acts* alleged in the
> administrative charge.  In other words, the charge must contain facts concerning
> the discriminatory and retaliatory actions underlying each claim; this follows from
> the rule that "each discrete incident" of alleged discrimination or retaliation
> "constitutes its own 'unlawful employment practice' for which administrative
> remedies must be exhausted.  Hence, any adverse employment actions occurring

---

[41]*Jones*, 502 F.3d at 1183.

[42]*Id*. at 1186 (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

[43]*Id*.

[44]*Martinez*, 347 F.3d at 1210.

[45]*Morgan*, 536 U.S. at 102.

10

after [plaintiff] submitted his administrative charge . . . would not fall within the scope of his charge."[46]

*1.     Termination*

Defendant argues that Plaintiff has not exhausted her termination-based claims because she never amended her Charge with the UALD to include the termination.  Plaintiff argues that she was not required to amend her Charge to include information about her termination because the UALD was aware of her termination, and because her termination was within the scope of the administrative investigation into her Charges of discrimination and retaliation.

While it is true that the UALD asked Defendant to provide "[d]ocuments relating or referring to the reason why Charging Party is no longer employed,"[47] it is not clear that the UALD performed any investigation into whether Plaintiff's October 2009 termination was discriminatory or retaliatory.  Plaintiff's Amended Charge clearly alleges discrimination and retaliation for her reduction in hours and for her restriction on working past 6:00 p.m.  Regarding those issues, the UALD requested a "list of employees in the same or similar position as Charging Party from February 2009 to September 2009" who had their hours reduced or who were disciplined in similar circumstances to Plaintiff.[48]  The UALD asked for no such list regarding the October termination, indicating that the termination was not being investigated for claims of discrimination or retaliation, as such claims had not been alleged.  In fact, the

---

[46]*Jones*, 502 F.3d at 1186 (quoting *Martinez*, 347 F.3d at 1210).

[47]Docket No. 33 Ex. 18, at 2.

[48]*Id.* at 3.

Determination and Order issued by the UALD at the conclusion of its investigation makes no reference to Defendant's October termination.[49]

Furthermore, Plaintiff's argument ignores the clear language from the Tenth Circuit that a termination is a discrete act that must be separately exhausted,[50] and that the Charge must "contain facts concerning the discriminatory and retaliatory actions underlying each claim."[51] The question is not whether the UALD was aware of the termination, but whether the Charge itself contains the underlying facts.[52]

For these reasons, the Court finds that Plaintiff has not exhausted her administrative remedies with regards to her termination.  Therefore the Court will dismiss Plaintiff's termination based claims.

 *2. Language-usage discrimination*

Although not alleged in her Complaint, in her briefing Plaintiff alleges that Defendant discriminated against her by requiring her to speak English in the work place while not requiring Asian employees to do the same.  In her Charge with the UALD, Plaintiff alleged that Defendant was "giving preference to Asian employees by giving them full time hours" while cutting her own, but neither her original Charge nor the subsequent Amended Charges mention

---

[49]*See* Docket No. 50, at 1-6.

[50]*Martinez*, 347 F.3d at 1210 (quoting *Morgan*, 536 U.S. at 114).

[51]*Jones*, 502 F.3d at 1186.

[52]*See Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) (citing 42 U.S.C. § 2000e-5(b)); *Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 857 (10th Cir. 2005) (unpublished); *Atkins v. Sw. Bell Tel. Co.*, 137 F. App'x 115, 118 (10th Cir. 2005) (unpublished).

discriminatory language requirements.  Nor does the Determination and Order issued by the

UALD at the conclusion of its investigation make reference to these claims.[53]

Plaintiff argues that these claims are nonetheless exhausted, because an investigation into

these claims, "would be a natural outgrowth" of her allegations that Asian employees were

preferentially receiving increased hours.  However, as discussed before, to the extent Plaintiff

wishes to allege a discrete act of discrimination, her Charge must contain the facts underlying

that claim.  For this reason, she has not exhausted her claim for discrimination based on

preferential language treatment.

For these reasons, the Court finds that Plaintiff has failed to exhaust her claim for

discrimination based on language preferences.  The Court will dismiss this claim insofar as it

alleges a discrete act of discrimination.  However, as Plaintiff has exhausted her claim for

discrimination based on a reduction in hours, the Court may still consider Plaintiff's allegations

as evidence of discrimination insofar as it is relevant to that claim.

B.      EXHAUSTED CLAIMS

1.      *Discrimination Under Title VII*

Where, as here, a plaintiff does not present direct evidence of intentional discrimination

but instead relies on circumstantial evidence, courts apply the "*McDonnel Douglas* burden

shifting framework originally devised in the Title VII context to evaluate whether [Plaintiff] has

---

[53]*See* Docket No. 50, at 1-6.

13

demonstrated Defendant['s] discriminatory intent circumstantially."[54]  "Under the *McDonnell Douglas* scheme, in order to survive summary judgment on a circumstantial case, the plaintiff must first establish a prima facie case of discrimination."[55]

> If the plaintiff carries that burden, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the challenged employment action.  If the defendant makes such a showing, the burden reverts to the plaintiff to prove that the proffered nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent.[56]

To make out a prima facie case of discrimination, Plaintiff must demonstrate "(1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[57]

Plaintiff is able to make out a prima facie case of discrimination on her claim that Defendant discriminated against her by reducing her hours in favor of her Asian co-workers in both February 2009 and September 2009.  First, Plaintiff is hispanic, a protected class under Title VII.  Second, the parties do not dispute that the reductions in Plaintiff's hours constitute adverse employment actions.  Finally, Plaintiff has provided testimony that Asian co-workers did not have their hours reduced when Plaintiff's hours were.

As Plaintiff has made a prima facie case of discrimination, the burden shifts to Defendant to state a facially nondiscriminatory reason for reducing Plaintiff's hours.  Defendant need "only

---

[54]*Reynolds v. Sch. Dist. No. 1, Denver Colo.*, 69 F.3d 1523, 1533 (10th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973)).

[55]*Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

[56]*Id.* (internal citation omitted).

[57]*Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason."[58]   Defendant has done this by providing evidence that Plaintiff's hours were reduced due to a decrease in work available to the content and species department.  Although Defendant did not cut the hours of all employees, it chose to reduce the hours of the employees with the slowest average sample processing times as determined by computer records.

As Defendant has articulated a facially nondiscriminatory reason for reducing Plaintiff's hours, the burden reverts to Plaintiff to "prove that the proffered nondiscriminatory reason is pretextual."[59]   In order to establish a genuine issue as to pretext, Plaintiff must show that Defendant's "proffered non-discriminatory reason is unworthy of belief."[60]   Plaintiff may accomplish this "by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[61]

---

[58]*Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 n.4 (10th Cir. 2007).

[59]*Reynolds*, 69 F.3d at 1523.

[60]*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[61]*Id.* (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

To do this in the context of a RIF,[62] "a plaintiff can demonstrate pretext in three principal ways."[63]   Plaintiff can present evidence that (1) the adverse action taken against her did "not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to" adversely affect her, "or (3) that the RIF generally was pretextual."[64]

Plaintiff argues that Defendant's proffered reason is pretextual because (1) the hours of other employees were not actually reduced; (2) Plaintiff was more accurate than other employees and worked at an above-average speed; (3) the computer efficiency rankings lack evidentiary support; and (4) Defendant did not address Plaintiff's complaints that Asian employees were receiving a language preference.   These arguments will be discussed in turn.

a.      Co-worker hours

Plaintiff argues that Defendant has not produced adequate evidence in support of its claim that it reduced the hours of other staff besides Plaintiff.   In support of this claim, Plaintiff argues that the letter informing Plaintiff of the reduction in her hours did not mention the other employees, that Defendant failed to produce time records showing a reduction in hours for Plaintiff's co-workers, and that Defendant did not inform the UALD that it reduced the hours of other staff.

---

[62]Although the Court is not considering Plaintiff's termination here, it is nevertheless appropriate to consider this action in a RIF context, as the reduction in hours program was applied to the department as a whole.

[63]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).

[64]*Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006) (citing *Beaird,* 145 F.3d at 1168).

However, these arguments fail to create a dispute as to the facts presented by Defendant. Contrary to Plaintiff's arguments, Defendant supplied the UALD with a list of twenty-two employees from nine different countries whose hours were reduced in February and/or September of 2009.[65]   In addition, Defendant has provided the Court with documentation showing the number of hours worked through August 31, 2009, by each of the twenty-five employees in the content and species department.[66]   Finally, the fact that the letter sent to Plaintiff and her family members did not include the names of other employees that had their hours reduced does not mean that Defendant did not reduce the hours of other employees.  Defendant was under no obligation to give Plaintiff information on the work schedules of its other employees, and the fact that it did not do so does not create grounds for any inference that the hours of other employees were not in fact reduced.

Plaintiff has provided no evidence that the hours of other employees were not reduced.  In fact, in her deposition, Plaintiff admits that Defendant "reduced many people."[67]   Under these circumstances, Plaintiff has failed to provide evidence that Defendant's nondiscriminatory reason for reducing Plaintiff's hours was pretextual.

b.      *Computer efficiency rankings*

Plaintiff disputes the accuracy of Defendant's computer efficiency rankings and argues that the data lacks evidentiary support.  However, Defendant has provided the Court with

---

[65]Docket No. 25 Ex. 6; *see* Docket No. 42, at 2.

[66]Docket No 25. Exs. 4, 8.

[67]Docket No. 24 Ex. 1, at 27.

testimony that the efficiency rankings are calculated automatically based on the time an employee has a sample checked out.  Employees were evaluated based on the average speed for completing samples rather than solely on their speed for completing a particularly easy or difficult sample. Finally, Defendant has explained that employees are only ranked on samples for which they performed a complete set of tests.  Furthermore, Defendant has provided the Court with the data on which those calculations are based, showing that Plaintiff was ranked number twenty out of twenty-five employees in 2008.  Plaintiff disputes Defendant's efficiency rankings based on argument and conjecture, but has not provided the Court with any evidence to support a finding of pretext in Defendant's given reason for reducing Plaintiff's hours.

     *c.     Plaintiff's accuracy*

Plaintiff argues that Defendant's reliance on the efficiency rankings are pretextual because they do not take into account the accuracy of an employee's work.  However, Plaintiff cannot "defeat summary judgment by claiming that she would have been retained if different RIF criteria had been used."[68]  Rather, "an employer 'may chose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment.'"[69]  Even if Plaintiff's work is more accurate than that of employees that did not have their hours reduced, the Court cannot substitute its judgement for Defendant's regarding which criteria it should have relied on in making its decision.

---

[68]*Beaird*, 145 F.3d at 1169.

[69]*Pippin*, 440 F.3d at 1197 (quoting *Beaird*, 145 F.3d at 1169).

> d.    *English in the workplace*

Plaintiff argues that Asian employees were allowed to speak their native languages at work, while she was required to use English.  Although she complained about this practice, management never addressed her concerns.  Plaintiff argues that this is further evidence of discrimination in the workplace which demonstrates that Defendant's stated reasons for reducing her hours was pretextual.

However, Plaintiff's assertion does nothing to call into doubt the reality of the economic difficulties Defendant cites.  Nor does it show that the need to reduce hours itself was pretextual or question the validity or accuracy of the criteria Defendant used to determine which employees' hours to reduce.  In short, in the context of a RIF, Plaintiff's arguments do not provide "evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[70]

For these reasons, the Court finds that Plaintiff has not presented sufficient evidence for a Jury to find that Defendant's proffered non-discriminatory reason for reducing Plaintiff's hours was pretextual.  Therefore, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's claim for discrimination under Title VII.

---

[70] *Pinkerton,* 563 F.3d at 1065 (quoting *Argo*, 452 F.3d at 1203).

19

2.      *Discrimination Under ADEA*

Plaintiff urges the Court to set aside the *McDonnell Douglas* analysis for its consideration

of her age discrimination claims because she has presented direct evidence of age discrimination.

"[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of

discrimination."[71]  "In such a case, we ask only whether the plaintiff's direct evidence is

sufficient to create a genuine issue of material fact to defeat summary judgment."[72]  Plaintiff

argues that statements made by coworkers, Jeff Chang and June Xin, that Defendant "needed

quick people and young,"[73] constitutes direct evidence of discrimination.

"'Direct evidence is evidence, which if believed, proves the existence of a fact in issue

without inference or presumption.'"[74]  Such evidence is generally "proof of 'an existing policy

which itself constitutes discrimination.'"[75]  "Direct evidence demonstrates on its face that the

employment decision was reached for discriminatory reasons."[76] "In contrast, 'statements of

personal opinion, even when reflecting personal bias or prejudice, do not constitute direct

evidence of discrimination, but at most, are only circumstantial evidence of discrimination

---

[71]*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

[72]*Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008).

[73]Docket No. 24 Ex. 1, at 57.

[74]*Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007)).

[75]*Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996) (quoting *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)).

[76]*Riggs,* 497 F.3d at 1117 (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)).

because the trier of fact must infer discriminatory intent from such statements.'"[77]  Even when

the statements are made by a decision maker, "the evidence would need to show that [the

decision maker] acted on his discriminatory beliefs."[78]

       The statements allegedly made by Jeff Chang and June Xin cannot be considered direct

evidence of discrimination because they require the Court to infer that these statements are not

mere personal opinions, but expressions of the policy of Defendant and Wilford Lieber, the

decision maker who ultimately reduced Plaintiff's hours.  Although Jeff Chang did have some

input into the decision on which employees should have their hours cut, there is no evidence

either that Wilford Lieber made his decision based on that input, or that Jeff Chang expressed a

preference for younger workers to Mr. Lieber.  As Plaintiff has not presented direct evidence of

age discrimination, this claim is subject to the *McDonnel Douglas* burden shifting analysis

described above.

       Defendant does not dispute that Plaintiff is over forty and protected under the ADEA, or

that the reduction in Plaintiff's hours constitutes an adverse employment action.  However,

Plaintiff has not pointed to any similarly situated employees that did not have their hours cut.

Indeed, Plaintiff confines her arguments to Defendant's termination decision.  In her deposition,

Plaintiff states that Asian employees were favored when hours were reduced, but does not

identify any younger employees.  Plaintiff merely proffers the alleged statements of Jeff Chang

---

[77]*Id.* (quoting *Hall*, 476 F.3d at 855).

[78]*Ramsey*, 907 F.2d at 1008.

and June Xin, but offers no evidence that older employees were actually treated differently than younger employees.  Without such evidence, Plaintiff's claims cannot survive.

Even were the Court to find that Plaintiff was able to establish a prima facie case of age discrimination, her claims would still fail under the earlier analysis concerning Plaintiff's Title VII discrimination claims.  Defendant has offered the same non-discriminatory reason and Plaintiff has made largely the same arguments that Defendant's reason is pretextual.  For these reasons, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's claim for discrimination under the ADEA.

    3.    Retaliation

Plaintiff claims that Defendant retaliated against her in violation of both Title VII and the ADEA by cutting her hours in September 2009, modifying her work schedule, and failing to investigate her claims of discrimination.  However, Plaintiff has acknowledged that the failure to investigate claim is not actionable, and the Court need only consider whether the reduction in Plaintiff's hours or the modification of her work schedule could be considered retaliation.

On June 24, 2013, the Supreme Court revisited the causation standard for a Title VII retaliation claim, holding that these claims "must be proved according to traditional principles of but-for causation, not the lessened causation test" previously used, in which a plaintiff was able to prove a retaliation claim by proving that retaliation was a motivating factor in the employment action.[79]  This holding reconciles the causation standard for Title VII retaliation claims with the

---

[79]*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---S. Ct.---, 2013 WL 3155234 at *14 (June 24, 2013).

standard the Supreme Court previously set in the ADEA context in *Gross v. FBL Financial Services, Inc.*[80]

Although the but-for causation standard places a higher burden on Plaintiff than the standard previously utilized in the Tenth Circuit, it does not alter the Court's analysis at this stage.  After *Gross*, the Tenth Circuit found that "the rule articulated in Gross has no logical effect on the application of *McDonnell Douglas* to age discrimination claims."[81]  The court found that *McDonnell Douglas* "does not shift the burden of persuasion from the plaintiff to the defendant. Rather, it shifts only the burden of production."[82]  Hence, *Gross* "does not preclude our continued application of *McDonnell Douglas* to ADEA claims."[83]

For the same reasons, this claim remains subject to the *McDonnel Douglas* burden shifting analysis described above.[84]  First, Plaintiff must establish a prima facie case of retaliation.  She may do this by showing "(1) [she] engaged in protected opposition to . . . discrimination; (2) [she] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[85]  If Plaintiff does

---

[80]557 U.S. 167 (2009).

[81]*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010).

[82]*Id.*

[83]*Id.*

[84]*See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008) ("If . . . the plaintiff is unable to directly establish that retaliation played a motivating part in the employment decision at issue, she may rely on the familiar three-part *McDonnel Douglas* framework to prove that the employer's proffered reason for its decision is a pretext for retaliation.").

[85]*Id.* at 1227.

this, Defendant must proffer a "legitimate, nondiscriminatory reason for" the adverse action.[86]

Upon Defendant's satisfactory proffer, Plaintiff "has the burden of demonstrating that this

proffered explanation is a pretext for retaliation."[87]

       The parties do not dispute that the Charges filed with the UALD constitute protected acts

under Title VII and the ADEA.  Nor do the parties dispute that a reduction in hours constitutes an

adverse employment action.  However, Defendant argues that the modification of Plaintiff's

work schedule could not be considered retaliatory because it was not an adverse employment

action.

       The Supreme Court has explained that "[t]he anti-retaliation provision [of Title VII]

protects an individual not from all retaliation, but from retaliation that produces an injury or

harm."[88]  "[A] plaintiff must show that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."[89]  "An employee's decision to

report discriminatory behavior cannot immunize that employee from those petty slights or minor

annoyances that often take place at work and that all employees experience."[90]  Rather, "[t]he

anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title

---

[86]*Id.* at 1228.

[87]*Id.*

[88]*Burlington N. & Sante Fe R.R. v. White*, 548 U.S. 53, 67 (2006).

[89]*Id*. at 68 (quotation marks and citations omitted).

[90]*Id*.

VII's remedial mechanisms."[91]  "It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."[92]

The Tenth Circuit has previously considered whether the denial of a preferred work time constitutes an adverse employment action, concluding that it did not.[93]  The Court reasoned that, "the shifts offered no differences in pay and benefits, nor was the night shift more arduous. Although claiming it to be a better assignment, [plaintiff's] stated desire for change was purely for personal reasons."[94]

In the case currently before the Court, the requirement that Plaintiff leave the premises by 6:00 p.m. did not change Plaintiff's job responsibilities, the pay she received, or even the amount of hours she could work.  It simply required her to work during the company's normal business hours and prevented her from working late into the evening.  Even if the late evening was Plaintiff's preferred work time, under Tenth Circuit precedent, Defendant's actions in modifying Plaintiff's work schedule simply do not rise to the level of a retaliatory adverse employment action protected under Title VII or the ADEA.[95]

---

[91]*Id.*

[92]*Id.* (quotation marks and citations omitted).

[93]*McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006).

[94]*Id.*

[95]Even if the modification of Plaintiff's work schedule was an adverse employment action, Plaintiff's claim fails under the *McDonnell Douglas* test.

The only remaining claim before the Court is Plaintiff's claim that the September reduction in her work hours was retaliatory.  In order to establish her prima facie case, Plaintiff must show a causal connection between the filing of her UALD Charges and the reduction in her work hours.  "A retaliatory motive may be inferred when an adverse action closely follows protected activity.  However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[96]

Plaintiff has shown that the September hours reduction was closely connected in time to the Charge she filed with the UALD.  Plaintiff filed her original Charge on August 27, 2009, and Plaintiff met with Wilford Lieber and Kristin Lieber on September 10, 2009, in order to discuss her Charge.  At that meeting, Plaintiff was told that she would not be fired for filing her Charge.  However, Plaintiff refused to mediate her claim.  A few days later, on September 14, 2009, Plaintiff was again called into a meeting in Wilford Lieber's office and was told that her hours would be reduced and that she would no longer be able to work past 6:00 p.m.  This close connection in time between Plaintiff's disagreements with management over the proper method of handling her Charge and the reduction in her hours is sufficient to establish a causal connection between her filing of the Charge and the reduction in her hours.

As discussed earlier, Defendant has provided a non-retaliatory reason for reducing Plaintiff's hours.  Defendant claims that Plaintiff's hours were reduced due to a decrease in work

---

[96]*Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

available to the content and species department.  Due to this continued decrease in work,

Defendant chose to reduce the hours of the employees with the slowest average sample

processing times as determined by the 2008 computer records.  Plaintiff was ranked number

twenty out of twenty-five employees in the applicable records.

As Defendant has produced a non-retaliatory reason for reducing Plaintiff's hours, the

burden shifts back to Plaintiff to demonstrate that Plaintiff's reason is a pretext for retaliation.

Plaintiff uses the same arguments to attack Plaintiff's non-retaliatory reason as she used in her

ADEA and Title VII discrimination claims.  These arguments fail in this context for the same

reasons as those discussed earlier.  In addition to these reasons, Plaintiff also argues that the fact

that the September hours reduction occurred so shortly after her discussion with Wilford Lieber

and Kristin Lieber about her Charge provides sufficient evidence to show that Defendant's

reason is pretextual.  Had Defendant singled out Plaintiff, this timing might have provided

sufficient evidence for a jury to find that Defendant's reasoning was pretextual.  However,

Defendant reduced Plaintiff's hours in the context of a RIF after applying objective criteria.

Eventually, Defendant laid off nearly half the members of the content and species department due

to the same economic difficulties that led to the reduction in hours.

Plaintiff's arguments do not show that Defendant's actions were not in accord with the

RIF criteria, that the RIF data was manipulated or falsified, or that the RIF was generally

pretextual.[97]  For these reasons, the Court will grant Defendant's Motion.

---

[97] *See Pippin*, 440 F.3d at 1193.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 24) is

GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and close this

case forthwith.

DATED   July 8, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge